Michael S. LeBoff - CA Bar No. 204612
Hannah B. Stetson - CA Bar No. 327086
KLEIN & WILSON
A Partnership of Professional Corporations
4770 Von Karman Avenue
Newport Beach, California 92660
(949) 631-3300; Facsimile (949) 631-3703
leboff@kleinandwilson.com; hstetson@kleinandwilson.com

Attorneys for Plaintiff MICHAEL PLUMB

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL PLUMB, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM, INC., an Indiana corporation; and DOES 1 through 10, inclusively,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Michael Plumb ("Plaintiff"), alleges the following against defendant Anthem, Inc. ("Anthem") and Does 1 through 10 (collectively "Defendants").

**PARTIES AND VENUE**

1. Plaintiff is an individual who resides in the County of Orange, California. Plaintiff is a citizen of the State of California.

2. Anthem is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Anthem conducts substantial business in California.

3. Does 1 through 10, inclusive, are defendants whose identities have not yet been ascertained. They are individuals, partnerships, corporations, or some other business entity. On information and belief, each Doe defendant was somehow responsible for the damages caused in this case. As soon as the true identities and

/ / /

1

capacities of the Doe defendants have been ascertained, this complaint will be amended to reflect the true names and capacities of each Doe defendant.

4. Each defendant was the agent, alter-ego, employee, principal, partner, joint venturer, employer, or in some other capacity derivatively responsible for each of the acts of the other defendants.

## JURISDICTION AND VENUE

5. The court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. Plaintiff is a citizen of the State of California. Anthem is a citizen of the State of Indiana. By way of this complaint, Plaintiff seeks a declaration that the Restricted Stock Unit Award Agreement, Performance Stock Unit Award Agreement, and the Nonqualified Stock Option Award Agreement (collectively "Agreements") entered into by the parties contains certain illegal and unenforceable provisions. Anthem contends if Plaintiff violates these provisions, Plaintiff must forfeit benefits worth well in excess of $75,000.

6. Venue is proper in the Central District of California under 28 U.S.C. § 1391 because Anthem is subject to the court's personal jurisdiction and thus resides in this judicial district, and because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

7. This action for declaratory relief arises from Anthem's attempt to enforce illegal non-competition and forfeiture provisions, preventing Plaintiff from seeking employment in California following his termination without cause.

8. On or about March 3, 2010, Plaintiff entered into an employment agreement with CareMore Medical Enterprises ("CareMore").

9. Plaintiff became an employee of Anthem when Anthem acquired CareMore in or around late 2011.

10. Substantially all of Plaintiff's work for Anthem and the performance of his duties as an Anthem employee occurred in California.

11. On information and belief, on or about May 18, 2017, Anthem shareholders approved the 2017 Anthem Incentive Compensation Plan (the "Plan") and the Plan became effective.

12. Plaintiff entered into the Plan and the Agreements in California.

13. Plaintiff entered into the Plan and the Agreements as a condition of his employment with Anthem.

14. The Agreements contain various restrictive covenants. Section 7(b) of the Restricted Stock Unit Award Agreement contains a non-competition provision (the "Non-Competition Provision"), which provides in full:

> "*Non-Competition*. During any period in which the Participant is employed by the Company, and during a period of time after the Participant's termination of employment (the 'Restriction Period') which, unless otherwise limited by applicable state law, is (i) twenty-four (24) months for Executive Vice Presidents and the President & Chief Executive Officer, and (ii) the greater of the period of severance or twelve (12) months for all other Participants, the Participant will not, without prior written consent of the Company, directly or indirectly seek or obtain a Competitive Position in a Restricted Territory and perform a Restricted Activity with a Competitor, as those terms are defined herein.
>
> (i) Competitive Position means any employment or performance of services with a Competitor (A) the same as or similar to the services in which Participant performed for the Company in the last twenty-four (24) months of Participant's employment with Company, or (B) in which the Participant will use any Confidential Information of the Company.
>
> (ii) Restricted Territory means any geographic area in which the Company does business and in which the Participant provided services in, had responsibility for, had a material presence or influence in, or had access to Confidential Information about, such business, within the thirty-six (36) months prior to the Participant's termination of employment from the Company.
>
> (iii) Restricted Activity means any activity for which the Participant had responsibility for the Company within the thirty-six (36) months prior to the termination of the

Participant's employment from the Company or about which the Participant had Confidential Information.

(iv) Competitor means any entity or individual (other than the Company or its affiliates) engaged in management of network-based managed care plans and programs, or the performance of managed care services, health insurance, long term care insurance, dental, life or disability insurance, behavioral health, vision, flexible spending accounts and COBRA administration or other products or services substantially the same or similar to those offered by the Company while the Participant was employed, or other products or services offered by the Company within twelve (12) months after the termination of Participant's employment if the Participant had responsibility for, or Confidential Information about, such other products or services while the Participant was employed by the Company.

(v) The restrictions contained in this subsection (b) shall not apply to attorneys who accept a Competitive Position that consists of practicing law."

15. Section 7(c) of the Restricted Stock Unit Award Agreement contains a non-solicitation of customers provision (the "Non-Solicitation of Customers Provision"), which provides in full:

"*Non-Solicitation of Customers*. During any period in which the Participant is employed by the Company, and during the Restriction Period after the Participant's termination of employment, the Participant will not, either individually or as an employee, partner, consultant, independent contractor, owner, agent, or in any other capacity, directly or indirectly, for a Competitor of the Company as defined in subsection (b) above: (i) solicit business from any client or account of the Company or any of its affiliates with which the Participant had contact, participated in the contact, or responsibility for, or about which the Participant had knowledge of Confidential Information by reason of the Participant's employment with the Company, (ii) solicit business from any client or account which was pursued by the Company or any of its affiliates and with which the Participant had contact, or responsibility for, or about which the Participant had knowledge of Confidential Information by reason of the Participant's employment with the Company, within the twelve (12) month period prior to termination of employment. For purposes of this provision, an individual policyholder in a plan maintained by the Company or by a client or account of the Company under which individual policies are issued, or a certificate holder in such plan under which group policies are issued, shall not be considered a

client or account subject to this restriction solely by reason of being such a policyholder or certificate holder."

16. Section 7(d) of the Restricted Stock Unit Award Agreement contains a non-solicitation of employees provision ("Non-Solicitation of Employees Provision"), which provides in full:

> "*Non-Solicitation of Employees*. During any period in which the Participant is employed by the Company, and during the Restriction Period after the Participant's termination of employment, the Participant will not, either individually or as an employee, partner, independent contractor, owner, agent, or in any other capacity, directly or indirectly solicit, hire, attempt to solicit or hire, or participate in any attempt to solicit or hire, for any non-Company affiliated entity, any person who on or during the six (6) months immediately preceding the date of such solicitation or hire is or was an officer or employee of the Company, or whom the Participant was involved in recruiting while the Participant was employed by the Company."

17. Section 8 of the Restricted Stock Unit Award Agreement, titled "Return of Consideration" (the "Forfeiture Provision"), provides if Plaintiff violates any of the provisions of Section 7 of the Restricted Stock Unit Award Agreement, the result is a forfeiture as described in Section 8:

> "8. <u>Return of Consideration</u>.
>
> (a) If at any time a Participant breaches any provision of Section 7 or Section 11 then: (i) all unexercised Company stock options under any Designated Plan (defined below) whether or not otherwise vested shall cease to be exercisable and shall immediately terminate; (ii) the Participant shall forfeit any outstanding restricted stock or other outstanding equity award made under any Designated Plan and not otherwise vested on the date of breach; and (iii) the Participant shall pay to the Company (A) for each share of common stock of the Company ('Common Share') acquired on exercise of an option under a Designated Plan within the 24 months prior to such breach, the excess of the fair market value of a Common Share on the date of exercise over the exercise price, and (B) for each share of restricted stock and/or performance stock that became vested under any Designated Plan within the 24 months prior to such breach, the fair market value (on the date of vesting) of a Common Share. Any amount to be repaid pursuant to this Section 8 shall be held by the Participant in constructive trust for the

benefit of the Company and shall, upon written notice from the Company, within 10 days of such notice, be paid by the Participant to the Company with interest from the date such Common Share was acquired or the share of restricted stock became vested, as the case may be, to the date of payment, at 120% of the applicable six month short-term applicable federal rate. Any amount described in clauses (i) and (ii) that the Participant forfeits as a result of a breach of the provisions of Sections 7 or 11 shall not reduce any money damages that would be payable to the Company as compensation for such breach.

(b) The amount to be repaid pursuant to this Section 8 shall be determined on a gross basis, without reduction for any taxes incurred, as of the date of the realization event, and without regard to any subsequent change in the fair market value of a Common Share. The Company shall have the right to offset such amount against any amounts otherwise owed to the Participant by the Company (whether as wages, vacation pay, or pursuant to any benefit plan or other compensatory arrangement other than any amount pursuant to any nonqualified deferred compensation plan under Section 409A of the Code).

(c) For purposes of this Section 8, a 'Designated Plan' is each stock option, restricted stock, or other equity compensation or long-term incentive compensation plan."

18. Sections 7(b)-(d) and 8 of the Performance Stock Unit Award Agreement, and the Nonqualified Stock Option Award Agreement are virtually identical to the provisions of the Restricted Stock Unit Award Agreement quoted above.

19. On or about July 6, 2020, Anthem terminated Plaintiff's employment without cause.

20. Following Plaintiff's termination, Anthem told Plaintiff he was bound by the various restrictive covenants in the Agreements and specifically, for a period of 12 months following Plaintiff's termination, he was bound by the Non-Competition Provision and the Non-Solicitation of Customers Provision, and Non-Solicitation of Employees Provision (collectively, the "Non-Solicitation Provisions").

21. On multiple occasions, Plaintiff requested Anthem refrain from enforcing the above provisions, so that Plaintiff may obtain future employment. Anthem has refused each request.

533137

22. As a result, following Anthem's termination of Plaintiff's employment, Plaintiff is unable to seek employment without risking the forfeiture of the consideration and benefits earned as compensation for his employment with Anthem.

## FIRST CAUSE OF ACTION
## FOR DECLARATORY RELIEF
### (Against Anthem and DOES 1 through 10)

23. Plaintiff incorporates by reference paragraphs 1 through 22 of this complaint as though fully set forth.

24. There is presently an actual, justiciable controversy and dispute between Plaintiff and Defendants regarding whether: (1) the Agreements' Non-Competition Provisions are enforceable; (2) the Agreement's Non-Solicitation Provisions are enforceable; and (3) the Agreements' Forfeiture Provisions are enforceable. These disputes cannot be resolved without judicial intervention.

25. Anthem contends Plaintiff cannot seek employment in California (nor in any other "restricted territory" as defined in the Agreements) pursuant to the Non-Competition Provision and Non-Solicitation Provisions of the Agreements. Anthem contends if Plaintiff seeks employment from any employer considered to be a "competitor" (as Anthem broadly defines the term in the Agreements) or if Plaintiff otherwise violates Section 7 of the Agreements, Plaintiff is subject to the forfeiture of consideration and benefits earned as compensation for his employment with Anthem, pursuant to the Agreements' Forfeiture Provision.

26. In contrast, Plaintiff contends the Agreements' Non-Competition Provision and Non-Solicitation Provisions are void and unenforceable as violations of California *Business & Professions* Code section 16600 and California *Labor Code* section 925. Plaintiff also contends the Forfeiture Provision constitutes an unlawful liquidated damages provision under California *Civil Code* section 1671 and is, therefore, void and unenforceable.

///

27. Therefore, a judicial declaration setting forth the rights and liabilities of the parties is necessary and appropriate. Without declaratory relief, Plaintiff will be irreparably harmed.

28. The court may enter a judgment declaring the rights and other legal relations of the parties under 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants.

**As to All Causes of Action:**

1. A judgment declaring:

    A. The Agreements' Non-Competition Provisions are unlawful and unenforceable;

    B. The Agreements' Non-Solicitation Provisions are unlawful and unenforceable;

    C. The Agreements' Forfeiture Provisions are unlawful and unenforceable;

2. Costs of suit; and

3. Any and all relief the court may deem just and proper.

Respectfully submitted,

KLEIN & WILSON

Dated: September 11, 2020

By: */s/ Michael S. LeBoff*
    Michael S. LeBoff
    Attorneys for Plaintiff Michael Plumb